Slip Op. 14-121

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────┐
│ KWO LEE, INC.                    │
│                                  │
│         Plaintiff,               │
│                                  │
│              v.                  │
│                                  │
│ UNITED STATES,                   │
│                                  │
│         Defendant.               │
│                                  │
└─────────────────────────────────┘
```

**PUBLIC VERSION**

Before: Donald C. Pogue,
              Senior Judge

Court No. 14-00212

OPINION and ORDER

[preliminary injunction granted]

Dated: October 16, 2014

Robert T. Hume and Carol Wyzinski, Hume & Associates, LLC, of Ojai, CA, for the Plaintiff.

Tara K. Hogan, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant.  Also on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel was Chi Choy, Attorney, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

**Pogue, Senior Judge**: Plaintiff, Kwo Lee, Inc.

(Shuzhang "Steven" Li, owner), moves to enjoin U.S. Customs and

Border Protection ("Customs" or "CBP") from imposing a single

transaction bond requirement on Plaintiff's entries of fresh

garlic from the People's Republic of China ("PRC"). Pl.'s Appl.

for a TRO & Mot. for a Prelim. Inj., ECF No. 7 ("Pl.'s Br."),

at 1.  Plaintiff's entries are subject to an antidumping duty

order (A-570-831).  Customs enhanced bond requirement would

equal Plaintiff's total potential antidumping duty liability as

calculated at the PRC-wide rate ($4.71/kg), rather than the

expected $0.35/kg cash deposit rate otherwise applicable to

Plaintiff's exporter/producer (Qingdao Tiantaixing Foods Co.,

Ltd. ("QTF")).  Id.; Am. Compl., ECF No.19, at ¶ 1.  Because

Plaintiff has established his entitlement to a preliminary

injunction, his motion is granted.


**BACKGROUND**

This action has its origins in a nearly twenty-year-

old antidumping duty order on fresh garlic from the PRC.  Fresh

Garlic from the [PRC], 59 Fed. Reg. 59,209 (Dep't Commerce Nov.

16, 1994) (antidumping duty order).  This order set a PRC-wide

rate at 376.67 percent (which translates to a cash deposit rate

of $4.71/kg of garlic).  Id. at 59,210; Ex. 3 to Pl.'s Br.

(Undated Port of San Francisco Information Notice), ECF No. 7-2

at Ex. 3 ("Information Notice").

QTF did not begin shipping fresh garlic to the United

States until 2006, at which point it requested and, following

investigation, was granted a new shipper rate ("NSR") by the

U.S. Department of Commerce ("Commerce").  Fresh Garlic from the

[PRC], 73 Fed. Reg. 56,550, 56,552 (Dep't Commerce Sept. 29,

2008) (final results and rescission, in part, of twelfth new

shipper reviews) ("Twelfth NSR").  QTF's NSR is 32.78 percent

(which translates to a cash deposit rate of $0.352/kg of

garlic). Id.; App. to Mem. Supp. Def.'s Opp'n to Pls.' Appl. for

TRO & Mots. for Prelim. Inj. ("Def.'s App."), (CBP Cash Deposit

Instructions for Fresh Garlic from China, A-570-831 (Oct. 15,

2008)), ECF No. 25-1 ("CBP Cash Deposit Instructions"), at A3.[1]

QTF made no subsequent shipments of the subject garlic to the

United States until 2014,[2] when Plaintiff attempted to import

some of QTF's fresh garlic. Ex. 5 to Pl.'s Br. (Decl. of Steven

---

[1] See also Ex. 1 to Pl.'s Br. (July 3, 2014 letter from QTF to
Customs), ECF No. 7-1 at 3 (requesting verification of $0.352/kg
rate); Pl.'s Br., ECF No. 7, at 2 n.3 (Plaintiff receiving oral
confirmation of $0.352/kg rate from Customs).

[2] For administrative reviews in which QTF timely certified it had
no shipments during the period of review, see Fresh Garlic from
the [PRC], Issues & Decision Memorandum, A-570-831, ARP 07-08
(June 14, 2010) (adopted in 75 Fed. Reg. 34,976, 34,980 (Dep't
Commerce June 21, 2010) (final results and partial rescission of
the 14th antidumping duty administrative review)) Issue 3 at 11
n.7 (noting that Customs issued a no-shipment inquiry for QTF,
and will only do so when the company has submitted a timely and
properly filed no shipment certification); Fresh Garlic from the
[PRC], 76 Fed. Reg. 37,321, 37,323 (Dep't Commerce June 27,
2011) (final results and final rescission, in part, of the 2008-
2009 antidumping duty administrative review); Fresh Garlic from
the [PRC], 77 Fed. Reg. 11,486, 11,489 (Dep't Commerce February
27, 2012) (partial final results and partial final rescission of
the 2009-2010 administrative review); Fresh Garlic from the
[PRC], 78 Fed. Reg. 36,168, 36,170 (Dep't Commerce June 17 3013)
(final results of antidumping administrative review; 2010-2011);
and, Fresh Garlic from the [PRC], 79 Fed. Reg. 36,721, 36,724
(Dep't Commerce June 30, 2014) (final results and partial
rescission of the 18th antidumping duty administrative review;
2011-2012).

[Li] (Owner)), ECF No. 7-2 ("Li Decl."), at ¶ 10.  Customs

denied entry, conducted import specialist review of entry

documents, and, ultimately, denied release of the entries. Def's

App. (Edert Decl.), ECF No 25-1 ("Edert Decl."), at A10-A11

¶¶ 6, 11.  Customs provided Plaintiff with notice that "[t]o

ensure entries are filed correctly and to protect [the] revenue

[of the United States]" it would require that he provide an

"additional single transaction bond [for each entry] to cover

antidumping duties" at the PRC-wide rate of $4.71/kg. See

Information Notice, ECF No. 7-2 at Ex. 3.  Plaintiff challenges

this determination as arbitrary and capricious under 28 U.S.C. §

1581(i) (2012).[3] See Am. Compl., ECF No. 19, at ¶ 2; Pl.'s Br.,

ECF No. 7, at 1.

        Plaintiff sought a temporary restraining order ("TRO")

and preliminary injunction to prevent Customs from imposing the

heightened bonding requirement, Pl.'s Br., ECF No. 7, at 1.  The

court held an evidentiary hearing on October 1, 2014, see Hr'g,

ECF No. 29, and subsequently granted Plaintiff's request for a

TRO. See TRO, Oct. 2, 2014, ECF Nos. 35 (conf. version) & 36

(pub. version).  This TRO, effective through midnight on October

16, 2014, enjoined Customs from imposing the heightened bond

requirement on the subject entries, and required instead that

---

[3] All further citations to the U.S. Code are to the 2012 edition.

the Plaintiff provide security to this Court in the amount of

one million dollars ($1,000,000.00), "to pay the costs or

damages as may be incurred or suffered by the Defendant in the

event of a finding that the Defendant has been wrongfully

enjoined or restrained." Id. at 2.


                              **DISCUSSION**

          "A preliminary injunction is an extraordinary remedy

never awarded as of right." Winter v. Natural Res. Def. Council,

Inc., 555 U.S. 7, 24 (2008) (citation omitted).  To obtain a

preliminary injunction, Plaintiff must establish: "[1] that he

is likely to succeed on the merits, [2] that he is likely to

suffer irreparable harm in the absence of preliminary relief,

[3] that the balance of equities tips in his favor, and [4] that

an injunction is in the public interest." Id. at 20 (citations

omitted).  No one factor is dispositive, FMC Corp. v. United

States, 3 F.3d 424, 427 (Fed. Cir. 1993), but "[c]entral to the

movant's burden are the likelihood of success and irreparable

harm factors." Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.,

74 F.3d 1216, 1219 (Fed. Cir. 1996).  The court evaluates a

request for a preliminary injunction on a "sliding scale," where

"the more the balance of irreparable harm inclines in the

plaintiff's favor, the smaller the likelihood of prevailing on

the merits he need show in order to get the injunction." Qingdao

Taifa Grp. Co. v. United States, 581 F.3d 1375, 1378-79 (Fed. Cir. 2009) (citing Kowalski v. Chi. Tribune Co., 854 F.2d 168, 170 (7th Cir. 1988)).  Because of this "sliding scale," we begin our analysis with discussion of irreparable harm.

I.   Plaintiff Has Shown a Viable and Immediate Threat of
     Irreparable Harm.

       Plaintiff must establish that, in the absence of a preliminary injunction, he will suffer irreparable harm. Winter, 555 U.S. at 20.  Harm is irreparable when "no damages payment, however great," can address it, Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (citations omitted); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992) (holding that equitable relief is only appropriate where legal remedies are inadequate).  The threat of irreparable harm must be immediate and viable — "[a] preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great." Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (quotation marks and citations omitted).[4]

---

[4] See also Winter, 555 U.S. at 22 (holding that movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original) (citing Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)); Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 441 (1974); O'Shea v. Littleton, 414 U.S. 488, 502 (1974) (additional citation to treatise omitted)).

Financial loss alone – compensable with monetary damages — is not irreparable. Sampson v. Murray, 415 U.S. 61, 90 (1974).  However, "the simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." Celsis In Vitro, 664 F.3d at 930. Irreparable harm may take the form of "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities." Id. (citing Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1362 (Fed. Cir. 2008); Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1382–83 (Fed. Cir. 2006)).[5]  Bankruptcy is an irreparable harm because, in addition to the obvious economic injury, loss of business renders a final judgment useless,

---

[5] See also Corus Grp. PLC v. Bush, 26 CIT 937, 943, 217 F. Supp. 2d 1347, 1354 (2002) ("Generally, where a party is required to fundamentally alter its business operations during litigation in order to comply with a challenged Government action, that party suffers irreparable harm."), aff'd in part sub nom. Corus Grp. PLC. v. Int'l Trade Comm'n, 352 F.3d 1351 (Fed. Cir. 2003); Decca Hospitality Furnishings, LLC v. United States, 30 CIT 357, 365-66, 427 F. Supp. 2d 1249, 1257-58 (2006) (importer may suffer irreparable harm when "unable to secure the necessary credit to cover the erroneous cash deposit rate pending a final and conclusive court decision"); CPC Int'l, Inc. v. United States, 19 CIT 978, 979, 896 F. Supp. 1240, 1243 (1995) (Irreparable harm occurs where "compliance with a ruling of Customs . . . would cause the importer to incur costs, expenditures, business disruption or other financial losses, for which the importer has no legal redress to recover in court, even if the importer ultimately prevails on the merits in contesting the ruling.").

depriving the movant of effective and meaningful judicial review. Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975).[6]

Here, Customs seeks to impose single transaction bond requirements on Plaintiff's entries of fresh garlic from the PRC equal to Plaintiff's total potential antidumping duty liability if calculated at the PRC-wide rate ($4.71/kg), see Information Notice, ECF No. 7-2 at Ex. 3, rather than the expected $0.35/kg cash deposit rate otherwise applicable to Plaintiff's exporter/producer, QTF. See Twelfth NSR, 73 Fed. Reg. at 56,552 (setting the antidumping duty rate); CBP Cash Deposit Instructions, ECF No. 25-1, at A3 (setting cash deposit rate); Ex. 1 to Pl.'s Br. (July 3, 2014 letter from QTF to Customs), ECF No. 7-1 at 3 (requesting verification of $0.352/kg rate); Pl.'s Br., ECF No. 7, at 2 n.3 (Plaintiff receiving oral confirmation of $0.352/kg rate from Customs).  For the Plaintiff, this means more than $10 million in additional bonding (i.e., 129 containers at an average of $117,500 additional bonding per container). See Li Decl., ECF No. 7-2 at

---

[6] See also Queen's Flowers de Colombia v. United States, 20 CIT 1122, 1127, 947 F. Supp. 503, 507 (1996); Am. Parcel Forwarding Co. v. United States, 4 CIT 94, 98 (1982) (not reported in F. Supp.); McAfee v. U.S., 3 CIT 20, 24, 531 F. Supp. 177, 179 (1982) ("It is difficult for this court to envision any irreparable damage to a plaintiff and his business more deserving of equitable relief than the [very] loss of the business itself.").

Ex. 5, at ¶ 10; Attach. to [Pl.'s] Resp. to Ct.'s Req., Oct. 2,

2012, ECF No. 34-1.[7]

         Normally, an importer could obtain such single

transaction bonds from a surety for a fraction of the bond

value, see Mem. Supp. Def.'s Opp'n to Pls.' Appl. for TRO &

Mots. for Prelim. Inj., ECF Nos. 17 (pub. version) & 25 (conf.

version) ("Def.'s Br.") at 16; [Def.'s] Resp. to Ct.'s Req.,

Sept. 30, 2014, ECF No. 26, at ¶ 1.  But Plaintiff does not

present a normal case.  Rather, obtaining a bond at this time,

in this industry would require full collateral for the millions

of dollars at issue. Pl.'s Resp. to Ct.'s Req., Oct. 2, 2012,

ECF No. 30; see also Conf. Tr. of Hr'g Held on Oct. 1, 2014

("Tr. TRO Hr'g")(test. Of Mr. Shuzhang "Steven" Li), ECF No. 40

("Li Test."), at 8:20-9:8, 17:21-18:17.[8]  Plaintiff represents

that he cannot provide this collateral any more than he can post

the full amount as a cash deposit. Li Test., ECF No. 40, at

15:1-4, 17:8-11; Tr. TRO Hr'g (Pl.'s Ex. 4), ECF No. 40 (bank

statements).  While he has paid the additional bonding for two

entries himself, see Attach. to [Pl.'s] Resp. to Ct.'s Req.,

Oct. 2, 2012, ECF No. 34-1 at 1 (listing two entries as released

---

[7] Defendant places total additional bonding required at $[[    ]]
million. [Def.'s] Resp. to Ct.'s Order, Oct. 2, 2014, ECF
Nos. 32 (conf. version) & 33 (pub. version), at 2.

[8] Cf. Decca Hospitality, 30 CIT at 366, 427 F. Supp. 2d at 1257-
58.

with payment of full collateral ($116,572.50)); Tr. TRO Hr'g
(Pl.'s Exs. 1 & 2), ECF No. 40 (providing Customs bonds and
collection receipts noting that cash was provided in lieu of
bond for two entries)), the vast majority of the garlic has
remained in limbo, accruing demurrage charges[9] and spoiling. Li
Decl., ECF No. 7-2 at Ex. 5, at ¶ 11.  Plaintiff also suffers
loss of goodwill and damage to his reputation from his domestic
customers due to his failure to deliver because of his inability
to pay the fully collateralized bond amount. Li Test., ECF No.
40, at 12:6-13:15; Tr. TRO Hr'g (Pl.'s Ex. 3), ECF No. 40
(letter from domestic customer to Plaintiff).  Unable to meet
either Customs' or his customers' demands, Plaintiff faces
imminent and immediate bankruptcy, loss of business, and,
therefore, loss of access to meaningful judicial review.
Accordingly, Plaintiff has sufficiently established irreparable
harm for a preliminary injunction.

II.  Plaintiff Has Established a Fair Chance of Success on the
     Merits.

        Where, as here, the Plaintiff has made a strong
showing of irreparable harm, "the burden to show a likelihood of

---

[9] That is, money owed to the shipping container company for use
of the containers beyond the agreed time. See id.; Black's Law
Dictionary 526 (10th ed. 2014) (defining demurrage as, inter
alia, "[a] charge due for the late return of ocean containers or
other equipment").

success is necessarily lower." Qingdao Taifa, 581 F.3d at 1381.

He need only establish a "fair chance of success on the merits,"

U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of

Commerce, 413 F.3d 1344, 1347 (Fed. Cir. 2005) (internal

quotation marks and citations omitted), by raising "questions

which are 'serious, substantial, difficult and doubtful.'"

Timken Co. v. United States, 6 CIT 76, 80, 569 F. Supp. 65, 70

(1983) (quoting Cnty. of Alameda v. Weinberger, 520 F.2d 344,

349-50 n.12 (9th Cir. 1975)).[10]

On the merits, Plaintiff challenges Customs'

determination that he must provide enhanced bonding. Am. Compl.,

ECF No. 19, at ¶ 1.  He faces a high burden: Customs has broad

authority to protect the revenue of the United States. See 19

U.S.C. §§ 66, 1623.  Further, Customs has promulgated extensive

bonding regulations, following notice-and-comment rulemaking,

pursuant to that authority.[11] This includes 19 C.F.R. § 113.13(d)

(2014) under which Customs makes enhanced bonding

determinations.  However, while Customs' "interpretation of its

own regulations is entitled to broad deference from the courts,"

Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352,

---

[10] See also Ugine & Alz Belgium v. United States, 452 F.3d 1289,
1295 (Fed. Cir. 2006) (finding sufficient likelihood of success
where matter was not "so clear cut" as to deny appeal).

[11] See Customs Bond Structure; Revision, 49 Fed. Reg. 41,152
(Oct. 19, 1984).

1363 (Fed. Cir. 2005) (citations omitted), the court must "hold unlawful and set aside agency action, findings, and conclusions found to be[] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[12]

The arbitrary and capricious standard of review is narrow and deferential. Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  Nonetheless, the court's inquiry must still be "searching and careful." Id.  Customs must have "articulate[d] a rational connection between the facts found and the choice made." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974) (internal quotation marks and citation omitted).  Customs cannot have "relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less

---

[12] The court reviews actions brought under 19 U.S.C. § 1581(i) (such as here) as provided in the Administrative Procedures Act, 5 U.S.C. § 706. See 28 U.S.C. § 2640(e).

than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., 419 U.S. at 285-86 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); Colo. Interstate Gas Co. v. FPC, 324 U.S. 581, 595 (1945).

On the present record, while the court has not reached a final decision as to the reasonableness of Customs' actions, the Plaintiff has established sufficient likelihood of success on the merits by raising "serious, substantial, difficult and doubtful" questions about the reasonableness of Customs' actions. See Timken, 6 CIT at 80, 569 F. Supp. at 70.

In making its enhanced bonding determination, Customs primarily relies on an alleged deficiency in Plaintiff's entry documents. Specifically, Customs asserts that Plaintiff's documents included incomplete or discrepant phytosanitary certificates. Def.'s Br, ECF No. 17, at 8-9; Edert Decl., ECF No. 25-1, at A11 ¶ 8-11; Def.'s App. (Pilipavicius Decl.), ECF No. 25-1 ("Pilipavicius Decl."), at A15-A16 ¶¶ 6, 9-10; Def.'s App. (Djeng Decl.), ECF No. 25-1 ("Djeng Decl."), at A22-A24 ¶¶ 3-9. According to Customs, the phytosanitary certificate is issued by the Chinese government and acts as a "birth certificate" of sorts for Plaintiff's garlic: It is a reliable way to know the identity of the producer, the facility in which the garlic was produced, and when it was produced. Pilipavicius Decl., ECF No. 25-1, at A15 ¶ 8; Djeng Decl., ECF No. 25-1, at

A23 ¶ 4.  To Customs, flaws in the certificate suggest
fraudulent entry documents. Def.'s Br., ECF No. 17, at 26-27;
Edert Decl., ECF No. 25-1, at A11 ¶ 8-11; Pilipavicius Decl.,
ECF No. 25-1, at A16 ¶ 9-11.

          However, Plaintiff has produced evidence that
indicates that the phytosanitary certificates provided by the
Chinese government are unreliable at best, being routinely
imperfect and incomplete. Tr. TRO Hr'g, ECF No. 40, at 37:5-8;
Add. Decl. of Shuzhang Li (Owner), ECF No. 12, at ¶ 4; Decl.
Zhao Zhenqing, ECF No. 31 ("Zhao Decl."), at ¶¶ 5-6.  Further,
even when complete, they do not provide the information Customs
expects:  Phytosanitary certificates indicate storage location
and inspection site, not producer. Tr. TRO Hr'g, ECF No. 40, at
30:4-10, 35:24-36:9; Zhao Decl., ECF No. 31, at ¶¶ 2-4
(explaining that provenance data on phytosanitary certificates
is based on site of inspection (warehouse or factory), not the
companies that use the facility).  If true, such evidentiary
unreliability could corrupt any rational connection between the
facts found (producer identity) and choices made (enhanced
bonding), rendering Customs' reliance on the certificates
arbitrary and capricious.  Moreover, if incomplete and
discrepant phytosanitary certificates are as pervasive as
Plaintiff would argue, <u>see</u> Tr. TRO Hr'g, ECF No. 40, at 36:4-9;
Zhao Decl., ECF No. 31, at ¶¶ 2-4; Attach. 1 to Zhao Decl., ECF

No. 31-1 (providing a sampling of incomplete and imperfect phytosanitary certificates from various companies), it would be discriminatory (i.e., arbitrary and capricious) for Customs to single out Plaintiff for heightened bonding requirements on this basis and not do the same for similarly situated companies with comparably imperfect phytosanitary certificates.

Further, Plaintiff raises doubts about the secondary "red flags" Customs relied upon in its enhanced bonding determination. Specifically, Plaintiff's sudden high volume of garlic imports was not indicative of planned antidumping duty fraud. See Edert Decl., ECF No 25-1, at A9-A10 ¶¶ 4, 7. Rather the Plaintiff was acting on a perceived business opportunity after an increase in the antidumping duty rates for other garlic importers made importation of QTF-produced garlic financially reasonable. See Tr. TRO Hr'g, ECF No. 40, at 39:1-14 (offering market opportunity as a possible explanation); Li. Decl., ECF No. 7-2 at Ex. 5, at ¶ 4 (explaining that QTF did not import garlic until 2014 due to "business issues"); see also Djeng Decl., ECF No 25-1, at A24 ¶¶ 8-9 (discussing the recent change in antidumping rates for Plaintiff's competitors). Moreover, contrary to Customs' allegations, QTF's garlic shipments were not too large for the time of year and their number of employees, as it was the harvest season when there is an influx of garlic on the market and workers work around the clock,

taking multiple shifts to process this garlic. Edert Decl., ECF
No 25-1, at A10 ¶ 7; Tr. TRO Hr'g, ECF No. 40, at 34:12-22.  It
follows that Plaintiff has established that Customs, by failing
to consider important aspects of the problem before it, may have
offered an explanation for its decision that runs counter to the
evidence.

        Plaintiff has also raised concerns about the adequacy
of the process accorded by Customs in requiring heightened
bonding, particularly the insufficiency of the Information
Notice, ECF No. 7-2 at Ex. 3, see Tr. TRO Hr'g, ECF No. 40, at
53:8-11, and Customs' failure to provide a reasoned decision
(rendering it arbitrary and capricious).  The present record
suggests Customs did not provide much, if any process outside
the generalized and terse statements in the Information Notice,
i.e., that heightened bonding was required "[d]ue to
discrepancies found with entry documents, concerns with bond
sufficiency[,] and the financial risk associated with the entry
of fresh garlic from the PRC." Information Notice, ECF No. 7-2
at Ex. 3.  Customs' bond determinations are reviewable and
Customs is required to provide "sufficient information as to the
basis for the change [in bonding requirements] to allow it to be
challenged in court." Hera Shipping, Inc. v. Carnes, 10 CIT 493,
496, 640 F. Supp. 266, 269 (1986); see Nat'l Fisheries Inst.,
Inc. v. U.S. Bureau of Customs & Border Prot., 33 CIT 1137,

1151-52, 637 F. Supp. 2d 1270, 1284-85 (2009).  It is unclear,
based on the current record, whether Customs has done so here.

          Accordingly, Plaintiff has raised serious and
substantial questions as to whether Customs' decision to require
enhanced bonding was arbitrary and capricious, and these
questions are sufficient to establish a fair chance of success
of the merits.

III.  The Balance of the Equities Favors the Plaintiff.

          Before granting a preliminary injunction, the court
"must balance the competing claims of injury and must consider
the effect" that granting or denying relief will have on each
party. Winter, 555 U.S. at 24 (internal quotation marks and
citation omitted).  Here, Plaintiff faces the immediate threat
of bankruptcy.  In the absence of a preliminary injunction, he
will suffer the irreparable harms of loss of business and loss
of access to meaningful judicial review.[13]  Customs, meanwhile,
faces the possible loss of millions of dollars in revenue to the
United States, see Def.'s Br., ECF No. 16, at 31; 19 U.S.C.
§ 1623 (directing Customs to protect the revenue of the United
States), in an industry that has already posed significant
antidumping duty collection problems. Edert Decl., ECF No. 25-1,
at A9 ¶¶ 2-3; Pilipavicius Decl., ECF No. 25-1, at A14-A15 ¶¶ 3-

---

[13] See discussion supra Section I.

4.  If a preliminary injunction is granted, Customs must risk
that, even if it succeeds on the merits, it will not collect the
duties owed (given their sheer magnitude and resultant financial
impossibility for the Plaintiff). See Def.'s Br., ECF No. 17,
at 31-32; see also Queen's Flowers, 20 CIT at 1128, 947 F. Supp.
at 508.

        But the record reveals that Commerce has previously
determined that the Plaintiff's producer/exporter is not subject
to the PRC-wide rate. Twelfth NSR, 73 Fed. Reg. at 56,552.
Accordingly, there is a possibility that enhanced bonding is
unnecessary and that there will be no harm to the revenue of the
United States.  Moreover, Plaintiff's exporter will be subject
to administrative review and collection of any actual
antidumping duties owed.[14]  It follows that the balance of the
equities favors the Plaintiff in that he faces imminent,
irreparable injury while Customs faces only possible, if
substantial, injury that is susceptible to both legal remedy and

---

[14] "[T]he United States uses a 'retrospective' assessment system
under which final liability for antidumping and countervailing
duties is determined after merchandise is imported." 19 C.F.R. §
351.212.  At entry, importers make a cash deposit of the
estimated antidumping duties, id. at 351.211(b)(2), but if, as
here, the antidumping duty rate is challenged by an interested
party, the final antidumping duty rate (and thus amount owed)
will be assessed pursuant to an administrative review, id. at
§§ 351.213, 351.211(b)(1), or, if appealed to this Court,
assessed according to the final decision in the action.
19 U.S.C. § 1516a(e)(2).

present mitigation (through requiring future cash deposits from the Plaintiff, thereby limiting Customs' exposure for unpaid duties and through requiring that a bond be filed with the court).[15]

IV.   The Public Interest will be Served by Granting the Plaintiff a Preliminary Injunction.

        The court "should pay particular regard for the public consequences" when "employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).  While Customs has a public interest in protecting the revenue of the United States, there is also a strong public interest in the proper execution of and compliance with the law. 19 U.S.C. §§ 66, 1623.  The public interest is served by the accurate and effective, uniform and fair enforcement of trade laws. Union Steel v. United States, 33 CIT 614, 622, 617 F. Supp. 2d 1373, 1381 (2009); Ceramica Regiomontana, S.A. v. United States, 7 CIT 390, 397, 590 F. Supp. 1260, 1265 (1984).  While "maintaining a maximum level of security for the unliquidated entries would serve broadly the public interest of revenue collection," this cannot be done "at the cost of continuing to subject [a plaintiff] to an unlawful, and discriminatory bonding requirement." Nat'l

---

[15] See Queen's Flowers, 20 CIT at 1128, 947 F. Supp. at 508 (similarly favoring movant in balance of the equities).

Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.,
__ CIT __, 751 F. Supp. 2d 1318, 1325 (2010).  Preserving
Plaintiff's access to meaningful judicial review, a public
interest in itself, protects against unchecked and unchallenged
enforcement by preserving Plaintiff's opportunity to litigate a
potentially meritorious claim. See Ugine-Savoie Imphy v. United
States, 24 CIT 1246, 1252, 121 F. Supp. 2d 684, 690 (2000);
Queen's Flowers, 20 CIT at 1127, 947 F. Supp. at 508.
Accordingly, the public interest will be served by granting the
Plaintiff a preliminary injunction.


                              **CONCLUSION**

        Plaintiff has demonstrated entitlement to a
preliminary injunction against Customs' requirement of enhanced
bonding at the PRC-wide rate.  Accordingly, Plaintiff's motion
is GRANTED, and it is hereby

        ORDERED that Defendant, its officers, delegates,
agents, servants, and employees, are enjoined for the pendency
of this litigation, including all relevant appeals and remands,
until such time as a final court decision is rendered within the
meaning of 19 U.S.C. § 1516a(e), from imposing single
transaction bond requirements on the entries by Plaintiff, Kwo
Lee, Inc., of garlic from the PRC exported by QTF as listed in
Appendix A to the TRO, ECF No. 35 ("subject entries"); it is

further

      ORDERED that Defendant, its officers, delegates, agents, servants, and employees, shall immediately rescind all single transaction bond requirements imposed on the subject entries; it is further

      ORDERED that Plaintiff shall continue to provide security in the amount of one million dollars ($1,000,000.00), as required by the TRO, to indemnify the costs or damages of a finding that the Defendant has been wrongfully enjoined or restrained as a result of this preliminary injunction; it is further

      ORDERED that the TRO entered on October 2, 2014, ECF Nos. 35 & 36, is vacated; and it is further

      ORDERED that the joint status report and briefing schedule for this action shall be filed with the court by November 7, 2014.


                      /s/ Donald C. Pogue
                      Donald C. Pogue, Senior Judge

Dated: October 16, 2014
      New York, NY