Slip Op. 15 - 56

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KWO LEE, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Donald C. Pogue, <br> Senior Judge <br><br> Court No. 14-00212 |

OPINION

[Negative bonding sufficiency determination sustained.]

Dated: June 12, 2015

Robert T. Hume, Hume & Associates, LLC, of Ojai, CA,
for Plaintiff.

Tara K. Hogan, Senior Trial Counsel, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice,
of Washington, DC, for Defendant.  With her on the brief were
Joyce R. Branda, Acting Assistant Attorney General, Jeanne E.
Davidson, Director, and Patricia M. McCarthy, Assistant
Director.  Of counsel was Chi S. Choy, Senior Attorney, Office
of Chief Counsel, U.S. Customs and Border Protection, of New
York, NY.

**Pogue, Senior Judge**: In this action, Plaintiff,

importer Kwo Lee, Inc., challenges the negative bond sufficiency

determination made by U.S. Customs and Border Protection

("Customs" or "CBP") on certain entries of fresh garlic from the

People's Republic of China ("PRC").[1] Am. Compl., ECF No. 19,
at ¶1.  Specifically, Customs has determined that Plaintiff must
post a single transaction bond for each such entry so that
Plaintiff's total security is equal to Plaintiff's potential
antidumping ("AD") duty liability as calculated at the PRC-wide
rate (376.67 percent),[2] rather than the substantially lower
combination rate (32.78 percent)[3] otherwise applicable to
Plaintiff's putative exporter and producer, Qingdao Tiantaixing
Foods Co., Ltd. ("QTF"). Id.  According to Customs, this
enhanced bonding is required because Plaintiff's entry documents
displayed a pattern of omissions and possible discrepancies that
made it impossible to verify the identity of the producer, and
therefore impossible to verify Plaintiff's eligibility for QTF's
special rate. Def.'s Resp. to Pl.'s Mot. for J. on the
Admin. R., ECF No. 56 ("Def.'s Resp."), at 11-12.  Plaintiff
argues that Customs' determination is invalid because it is not
in accordance with law, is arbitrary and capricious, and is the

---

[1] Plaintiff's entries are subject to the 20-year-old antidumping
duty order on fresh garlic from the PRC (A-570-831). Fresh
Garlic from the [PRC], 59 Fed. Reg. 59,209 (Dep't Commerce Nov.
16, 1994) (antidumping duty order) ("Garlic AD Duty Order").

[2] See Garlic AD Duty Order, 59 Fed. Reg. at 59,210 (setting the
PRC-wide rate).

[3] See Fresh Garlic from the [PRC], 73 Fed. Reg. 56,550, 56,552
(Dep't Commerce Sept. 29, 2008) (final results and rescission,
in part, of twelfth new shipper reviews) ("Twelfth NSR")
(assigning QTF a producer/exporter combination rate).

result of inadequate process. Mem. in Supp. of Pl.'s Rule 56.1
Mot. for J. upon the Agency R., ECF No. 55 ("Pl.'s Br."),
at 4-6.

As explained below, because Customs' determination was
in accordance with law, and neither arbitrary and capricious nor
an abuse of discretion, it is sustained.

**BACKGROUND**

This action has its roots in the 1994 AD duty order on
fresh garlic from the PRC (A-570-831). Garlic AD Duty Order, 59
Fed. Reg. at 59,209.  There, the U.S. Department of Commerce
("Commerce" or "the Department") set the PRC-wide rate at 376.67
percent. Id. at 59,210.  This rate is still in use today. See
Undated Port of San Francisco Information Notice, reproduced in
Apps. to Accompany [Pl.'s Br.] ("Apps. to Pl.'s Br."),
ECF No. 55-1 at app. 1 ("Information Notice").

In 2006, QTF began shipping fresh garlic to the United
States.  QTF requested and, following investigation, Commerce
granted QTF a new shipper rate ("NSR") of 32.78 percent. Twelfth
NSR, 73 Fed. Reg. at 56,552.  This NSR was a "combination rate,"
in that it only applies where QTF is both the producer and
exporter. Id.  When QTF is only the exporter, the PRC-wide rate
applies. Id. at 56,552-53.

Following the Twelfth NSR, QTF did not ship garlic to
the United States again until 2014,[4] with Plaintiff as importer.
Decl. of Steven [Li] (Owner of Kwo Lee, Inc.), reproduced in
Pl.'s Appl. for a TRO & Mot. for a Prelim. Inj., ECF No. 7-2 at
ex. 5, at ¶¶4-5.  These entries declared the garlic as subject
to the antidumping duty order on fresh garlic from the PRC,
A-570-831, with QTF as both the producer and exporter. Decl. of
Brian Pilipavicius, Supervisory Imp. Specialist, Area Port of
San Francisco, CBP, reproduced in [Con.] App. to [Def.'s Resp.],
ECF No. 56-1 at tab 1 ("Pilipavicius Decl."), at ¶6.  This made
the entries subject to the QTF NSR rate of 32.78 percent. Id.;
Twelfth NSR, 73 Fed. Reg. at 56,552.  However, because of a

---

[4] For administrative reviews in which QTF timely certified it had
no shipments during the period of review, see Fresh Garlic from
the [PRC], Issues & Decision Mem., A-570-831, ARP 07-08 (June
14, 2010) (adopted in 75 Fed. Reg. 34,976, 34,980 (Dep't
Commerce June 21, 2010) (final results and partial rescission of
the 14th antidumping duty administrative review)) Issue 3 at 11
n.7 (noting that Customs issued a no-shipment inquiry for QTF,
and will only do so when the company has submitted a timely and
properly filed no shipment certification); Fresh Garlic from the
[PRC], 76 Fed. Reg. 37,321, 37,323 (Dep't Commerce June 27,
2011) (final results and final rescission, in part, of the 2008-
2009 antidumping duty administrative review); Fresh Garlic from
the [PRC], 77 Fed. Reg. 11,486, 11,489 (Dep't Commerce February
27, 2012) (partial final results and partial final rescission of
the 2009-2010 administrative review); Fresh Garlic from the
[PRC], 78 Fed. Reg. 36,168, 36,170 (Dep't Commerce June 17,
2013) (final results of antidumping administrative review; 2010-
2011); and, Fresh Garlic from the [PRC], 79 Fed. Reg. 36,721,
36,724 (Dep't Commerce June 30, 2014) (final results and partial
rescission of the 18th antidumping duty administrative review;
2011-2012).

pattern of missing and possibly discrepant information, Customs
was unable to determine whether QTF was the producer.
Pilipavicius Decl., ECF No. 56-1 at tab 1, at ¶¶6-10; Decl. of
Frank Djeng, Senior Imp. Specialist, Area Port of San Francisco,
CBP, reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-1
at tab 2 ("Djeng Decl."), at ¶¶3-8; Decl. of Richard Edert,
Int'l Trade Specialist, Nat'l Targeting & Analysis Grp., Office
of Int'l Trade, CBP, reproduced in [Con.] App. to [Def.'s
Resp.], ECF No. 56-1 at tab 3 ("Edert Decl."), at ¶¶8-10.
Customs requested further documentation from Plaintiff to
verify, by other means, the identity of the producer, and
Plaintiff complied. E-mail from Nick Hong, Customs Broker, to
Marc Dolor, Senior Imp. Specialist, Area Port of San Francisco,
CBP, and Frank Djeng (Aug. 22, 2014, 02:25PM), reproduced in
[Con.] App. to [Def.'s Resp.], ECF No. 56-1 at tab 5 ("E-mail
from Hong to Dolor & Djeng"), at AR-000007-08 (e-mail),
AR-0000012 (attachment list); E-mail from Nick Hong to Frank
Djeng (Aug. 25, 2014, 08:01AM), reproduced in [Con.] App. to
[Def.'s Resp.], ECF No. 56-2 at tab 7, at AR-000170.  Review of
the responsive documents, however, suggested to Customs that QTF
did not have the ability to produce all of the garlic at issue.
Edert Decl., ECF No. 56-1 at tab 3, at ¶7.[5]

---

[5] See also QTF Production Records, reproduced in [Con.] App. to
(footnote continued)

        Unable to ascertain the identity of the producer,

Customs applied the AD duty rate for QTF as exporter with

another or an unknown producer, that is, the PRC-wide rate.

Customs denied entry pending the posting of additional security,

in the form of a series of single transaction bonds ("STBs"),

equal to this potential AD duty liability. CBP Form 4647,

reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2 at

tabs 11 & 14 ("CBP Form 4647"), at AR-000187-88, AR-000199-200;

Undated Port of San Francisco Information Notice, reproduced in

[Con.] App. to [Def.'s Resp.], ECF No. 56-2 at tabs 11 & 14

("Information Notice"), at AR-000189, AR-000201.[6]

        Plaintiff sought to preliminarily enjoin Customs from

requiring additional bonding. Pl.'s Appl. for a TRO & Mot. for a

Prelim. Inj., ECF No. 7, at 1.  Because Plaintiff showed likely

---

[Def.'s Resp.], ECF Nos. 56-1 & 56-2 at tab 6, at AR-000014-15
(questionnaire completed by Plaintiff), AR-000016-127 (raw
garlic purchase invoice and weighing slips), AR-000128-29
(process flow chart for fresh garlic and peeled garlic),
AR-000130 (list of machines and equipment used), AR-000131-42
(purchase invoices for machines and equipment used),
AR-000143-46 (sample electricity invoices, July 2014),
AR-000147-56 (sample invoices for packing material),
AR-000157-69 (payroll lists for May, June, and July 2014); Kwo
Lee Payroll List July 2014, reproduced in [Con.] App. to [Def.'s
Resp.], ECF No. 56-2 at tab 8, at AR-000173-78; Kwo Lee Payroll
List June 2014, reproduced in [Con.] App. to [Def.'s Resp.],
ECF No. 56-2 at tab 9, at AR-000179-82; Kwo Lee Payroll List May
2014, reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2
at tab 10, at AR-000183-85.

[6] See also Information Notice, ECF No. 55-1, at app. 1 (providing
the same document as reproduced in the Plaintiff's appendices).

irreparable harm and raised serious and substantial questions as to the merits, with the balance of the equities and the public interest in his favor, the court granted Plaintiff's motion. Kwo Lee, Inc. v. United States, __ CIT __, 24 F. Supp. 3d 1322 (2014).  Instead of the STBs required by Customs, the court required Plaintiff to provide security in the amount of one million dollars ($1,000,000.00) held by the court. Id. at 1332.

Plaintiff now moves for judgment on the agency record pursuant to USCIT Rule 56.1.  Mot. of Pl. Kwo Lee, Inc. for J. upon the Agency R., ECF No. 55.

## STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (2012) and will therefore uphold Customs' enhanced bonding determination unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[7]

## DISCUSSION

### I.  Customs' Determination Was Within Its Statutory Authority

*A. Customs' Statutory Authority to Make Bond Sufficiency Determinations and Require Additional Bonding*

Customs has broad statutory authority to protect the revenue of the United States through the imposition of bonding

---

[7] See 28 U.S.C. § 2640(e) (Actions brought under § 1581(i) are reviewed "as provided in section 706 of title 5.").

requirements on imports. <u>See</u> 19 U.S.C. §§ 66, 1623.[8]  Pursuant to

this authority, Customs has promulgated extensive regulations,

<u>see</u> <u>Customs Bond Structure; Revision</u>, 49 Fed. Reg. at 41,152

(amending Customs regulations "to revise the Customs bond

structure by consolidating and reducing the number of bond forms

in use"), in an effort to specify and structure the bonding

application, approval, and execution process. 19 C.F.R. § 113.0

(2014).

    The statute specifically provides that even where a

"bond or other security is not specifically required by law,"

Customs may "by regulation or specific instruction require, or

authorize customs officers to require, such bonds or other

security as he, or they, may deem necessary for the protection

of the revenue or to assure compliance with any provision of

law, regulation, or instruction which [Customs] may be

authorized to enforce." 19 U.S.C. § 1623(a).[9]  Under the

---

[8] A bond is generally required as part of the entry
documentation.  The bond ensures "that proper entry summary with
payment of estimated duties and taxes when due, will be made for
imported merchandise and that any additional duties and taxes
subsequently found to be due will be paid." <u>Customs Bond
Structure; Revision</u>, 49 Fed. Reg. 41,152, 41,152 (Dep't Treasury
Oct. 19, 1984).

[9] <u>See also</u> 19 U.S.C. § 66 ("[Customs] shall prescribe forms of
entries, oaths, bonds, and other papers, and rules and
regulations not inconsistent with law, to be used in carrying
out the provisions of law relating to raising revenue from
imports, or to duties on imports, or to warehousing, and shall
                                            (footnote continued)

corresponding Customs' regulations, port directors are instructed to determine whether a bond "is in proper form and provides adequate security" for the entries at issue. 19 C.F.R. § 113.11.[10]  If he or she, or the drawback office, "believes that acceptance of a transaction secured by a continuous bond would place the revenue in jeopardy or otherwise hamper the enforcement of Customs laws or regulations," he or she may "require additional security." 19 C.F.R. § 113.13(d).

Because "the statute is silent on the specific method," and "expressly delegate[s] broad authority to Customs to prescribe all regulations necessary," these resultant regulations are entitled to "controlling weight," Chrysler Corp. v. United States, 592 F.3d 1330, 1335-36 (Fed. Cir. 2010), and will be sustained so long as they are "reasonably related to the purposes of the enabling legislation." Mourning v. Family Publ'ns Serv., Inc., 411 U.S. 356, 369 (1973) (quoting Thorpe v.

---

give such directions to customs officers and prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law.").

[10] See also 19 C.F.R. § 113.1 ("[T]he Commissioner of Customs . . . may by regulation or specific instruction require, or authorize the port director to require, such bonds or other security considered necessary for the protection of the revenue or to assure compliance with any pertinent law, regulation, or instruction.").

Hous. Auth. of City of Durham, 393 U.S. 268, 280—81 (1969))

(internal quotation marks omitted).[11]

The statute allows for such bonds as "deem[ed]

necessary for the protection of the revenue" of the United

States or "to assure compliance with any provision of law."

19 U.S.C. § 1623(a).  This is reflected in the language of the

regulation, which provides that "if a port director or drawback

office believes" that the current level of bonding "would place

the revenue in jeopardy or otherwise hamper the enforcement of

Customs laws or regulations," additional bonding may be

required. 19 C.F.R. § 113.13(d).  Because the regulation is

derived from the language of its enabling statute, it is

reasonably related to it.[12]  Customs' authority to make bond

sufficiency determinations and require additional bonding is

therefore sustained.[13]

---

[11] See also Yangzhou Bestpak Gifts & Crafts Co. v. United States,
716 F.3d 1370, 1377 (Fed. Cir. 2013) ("If the statute does not
clearly answer the relevant question, then the court must . . .
decide whether the agency's interpretation amounts to a
reasonable construction of the statute.") (citing Chevron,
U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837,
843 (1984)).

[12] Cf. Yangzhou Bestpak, 716 F.3d 1370, 1378 (holding that a
methodology derived from the relevant statutory language is a
reasonable reading of that statute).

[13] Cf. Carolina Tobacco Co. v. Bureau of Customs & Border Prot.,
402 F.3d 1345 (Fed. Cir. 2005) (affirming Custom's decision to
require either an increased continuous bond or single
transaction bond of comparable amount from plaintiff); Hera

(footnote continued)

B. *Customs' Ministerial Role in the Administration of*
   *Antidumping Duty Laws*

Customs' statutory authority to make bond sufficiency
determinations and require additional bonding is limited by the
agency's purely ministerial role in the enforcement of AD duty
laws and determinations. Reorganization Plan No. 3 of 1979,
44 Fed. Reg. 69,273, 69,274-75 (Dec. 3, 1979) (announcing
transfer from Customs to Commerce of, *inter alia*, all
substantive functions under 19 U.S.C. §§ 1671 *et seq.*),
effective under Exec. Order No. 12,188 of January 2, 1980,
45 Fed. Reg. 989, 993 (Jan. 4, 1980).  In application, this
means that, while Customs may consider potential AD duty
liability in determining whether an entry is sufficiently
bonded, it may not usurp Commerce's authority and make a
substantive AD duty determination, whether outright or in
effect, through a bond sufficiency determination.[14]

---

Shipping, Inc. v. Carnes, 10 CIT 493, 640 F. Supp. 266 (1986)
(affirming Custom's decision to require increased bonding from
plaintiff).

[14] See Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973,
977 (Fed. Cir. 1994) ("Customs merely follows Commerce's
instructions in assessing and collecting duties. Customs does
not determine the 'rate and amount' of antidumping duties under
19 U.S.C. § 1514(a)(2). Customs only applies antidumping rates
determined by Commerce."); Nat'l Fisheries Inst., Inc. v. U.S.
Bureau of Customs & Border Prot., 33 CIT 1137, 1160, 637
F. Supp. 2d 1270, 1291-92 (2009) (holding that Customs is not
precluded by statute from securing "potential [AD] duty
liability when a determination of bond sufficiency is made" but
                                        (footnote continued)

Here, contrary to Plaintiff's arguments, Customs' bond sufficiency determination was ministerial, not a substantive AD duty determination.  Plaintiff argues that by making a bond sufficiency determination and requiring additional bonding at the PRC-wide rate, Customs effectively "conduct[ed] its own antidumping investigation and [] substitute[d] its judgment regarding the antidumping law," – i.e., assigned to QTF, unjustifiably, the PRC-wide rate. Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for J. upon the Agency R., ECF Nos. 60 (con. ver.) & 61 (pub. ver.) ("Pl.'s Reply"), at 5.  However, Customs did not purport to assign QTF produced and exported garlic the PRC-wide rate.  It made no determination, nor did it need to, regarding Chinese government control or the applicability of the PRC-wide rate to QTF.  Customs only determined that it could not, with any certainty, identify the producer of the garlic at issue.  Pilipavicius Decl., ECF No. 56-1 at tab 1, at ¶11.  While QTF does have an NSR, it is a combination rate and only applies where QTF is both the producer and exporter. Twelfth NSR, 73 Fed. Reg. at 56,552; see also 19 C.F.R. § 351.107(b)(1).  Otherwise, the PRC-wide rate applies. See Twelfth NSR, 73 Fed.

_____

that such a determination is limited by Customs' ministerial role under the AD laws).

Reg. at 56,552-53.[15]  Customs, in the absence of evidence

establishing producer identity, applied the QTF/unknown producer

rate (the PRC-wide rate).[16]  Accordingly, Custom's decision to

require bonding equal to Plaintiff's potential antidumping duty

liability, as determined by Commerce, was not beyond its

authority and was therefore in accordance with law.

II.  Customs' Determination Was Not Arbitrary and Capricious.

        A bond sufficiency determination, however in

accordance with law, cannot be arbitrary and capricious.  The

agency's decision must be "based on a consideration of the

---

[15] Plaintiff argues that "Customs adopted the PRC-wide rate as
the default" when "there is no showing that Commerce ever
directed Customs to use this default rate, or under what
circumstances." Pl.'s Br., ECF No. 55, at 18.  However, this is
contradicted by the plain language of the pertinent antidumping
determination, where Commerce instructed that "for subject
merchandise exported by QTF . . . but not manufactured by
QTF . . . the cash deposit rate will continue to be the PRC-wide
rate (i.e., 376.67 percent)." Twelfth NSR, 73 Fed. Reg. at
56,552-53.

[16] Plaintiff also argues that because the AFA rate itself is
invalid and not in accordance with law, Customs' decision to
require enhanced bonding to that amount is not in accordance
with law. Pl.'s Br., ECF No. 55, at 9-11, 18-19.  This argument
is misaddressed.  As Plaintiff points out, Customs' role is
purely ministerial, such that it has no authority to calculate
or recalculate an AD duty rate.  It simply applies the rate as
determined by Commerce. See Shinyei Corp. of Am. v. United
States, Slip Op. 11-69, 2011 WL 2421227, *2 (CIT June 15, 2011)
("Customs must interpret Commerce's instructions precisely as
Customs' role in the process should be ministerial: Customs
should do no more than enact the intentions of Commerce.")
(citation omitted).

relevant factors," without "a clear error of judgment." Citizens
to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)
(citations omitted).  This requires that Customs explain the
available evidence and articulate a "rational connection between
the facts found and the choice made." Motor Vehicle Mfrs. Ass'n
of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52
(1983) (quoting Burlington Truck Lines, Inc. v. United States,
371 U.S. 156, 168 (1962)) (internal quotation marks omitted).
While the court "may not supply a reasoned basis for the
agency's action that the agency itself has not given," a
decision of "less than ideal clarity" may be upheld "if the
agency's path may reasonably be discerned." Bowman Transp., Inc.
v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86
(1974).  In the context of a bond sufficiency determination,
this means that a negative finding must be "based on a
reasonable belief as to the existence of the necessary
justifying conditions," and the resultant increase in bonding
must be reasonable "in relation to the objectives sought to be
secured." Hera Shipping, 10 CIT at 497, 640 F. Supp. at 269.

        Here, Customs reasonably determined[17] that it could not
verify that QTF was the producer because: (1) the phytosanitary

_____

[17] This rationale was not provided to Plaintiff by Customs in its
CBP Form 4647 or Information Notice.  But, while these provide
insufficient basis for judicial review, see Kwo Lee, __ CIT at
                                        (footnote continued)

certificates[18] that Plaintiff submitted with his entries were all

either incomplete or contained seemingly discrepant information,

preventing Customs from verifying that QTF was the producer;[19]

and (2) the supplemental documentation requested by Customs and

provided by Plaintiff, in order to identify the producer, could

reasonably be read to further undermined the claim that QTF was

the producer.[20]  From these factual findings, Customs reasonably

---

__, 24 F. Supp. 3d at 1330-31 (finding that the Information
Notice alone was insufficient for judicial review), the court
may consider affidavits from the agency to obtain "such
additional explanation of the reasons for the agency decision as
may prove necessary." Camp v. Pitts, 411 U.S. 138, 143 (1973).
The Defendant has provided such affidavits here. See also infra
note 24 (discussing the admissibility of Plaintiff's similar
affidavit).

[18] According to Customs, phytosanitary certificates are issued by
the Chinese government at the production site prior to export.
Pilipavicius Decl., ECF No. 56-1 at tab 1, at ¶7. A certificate
should "indicate[] the originating province, registered
production site, name of producer and production date," acting
as a "'birth certificate' of sorts" and is "the only way to
trace and identify the producer of the garlic, the facility in
which it was produced, and when it was produced." Id. at ¶8; see
also Djeng Decl., ECF No. 56-1 at tab 2, at ¶¶3-6.

[19] The certificates either "contained no [China Inspection and
Quarantine ("CIQ")] code, production lot number, and production
date, or the CIQ code was discrepant and belonged to a different
producer" (each producer is registered with the Chinese
government and has its own CIQ code). Pilipavicius Decl., ECF
No. 56-1 at tab 1, at ¶¶6, 8; see also Djeng Decl., ECF No. 56-1
at tab 2, at ¶¶6-8.

[20] See Edert Decl., ECF No. 56-1 at tab 3, at ¶7 (noting, inter
alia, that QTF never previously produced and exported such a
large quantity of garlic to the United States, and that, based
on documents provided by Plaintiff, it was unlikely that QTF had
                                              (footnote continued)

concluded that it could not reliably identify the producer, and
that, without evidence establishing that QTF was the producer,
the QTF NSR did not apply. Pilipavicius Decl., ECF No. 56-1 at
tab 1, at ¶¶6, 10-11; see also E-mail from Brian Pilipavicius to
Ted Hume, Counsel for Plaintiff (Sept. 3, 2014, 09:46AM),
reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2 at tab
15 ("E-mail from Pilipavicius to Hume"), at AR-000202.  Customs
instead applied the appropriate rate for QTF exports with an
unknown producer, the PRC-wide rate, and reasonably sought
additional bonding in that amount. Id.[21]

    Plaintiff has raised questions about the reliability
of phytosanitary certificates as a basis for producer
identification[22] and has provided alternative explanations from

_____

sufficient employees and facilities to process all the garlic it
claimed to have produced).

[21] Customs further supported its decision by contextualizing the
instant entries: Customs has had tremendous difficulty
collecting duties owed on fresh garlic from the PRC, and the
fact pattern here (a small importer with a minimal continuous
bond enters a large quantity of garlic) is common and often ends
in "uncollectable [duties] because the importers are no longer
active and cannot be found." See Edert Decl., ECF No. 56-1 at
tab 3, at ¶¶3-5.

[22] Plaintiff argues that phytosanitary certificates, as issued by
the Chinese government, are an unreliable means of establishing
producer identity, being routinely imperfect and incomplete,
and, when complete, being indicative of storage location and
inspection site, not producer.  See Pl.'s Br., ECF No. 55, at
14-15 (arguing that phytosanitary certificates are unreliable
evidence); Decl. of Zhao Zhenqing, Manager of QTF, reproduced in
Apps. to Pl.'s Br., ECF No. 55-1 at app. 2 ("Zhao Decl."), at ¶1
(footnote continued)

the seeming discrepancies and flaws in its documentation.[23] See

Kwo Lee, __ CIT at __, 24 F. Supp. 3d at 1328-31.  But this is

not sufficient to establish that Customs' decision was arbitrary

and capricious.[24]  Customs considered the relevant factors – the

---

(phytosanitary certificates are provided post-inspection to
indicate that the produce is pest-free, not to establish
producer identity), ¶¶2-4 (phytosanitary certificates indicate
storage and inspection site, not producer identity), ¶¶5-6
(phytosanitary certificates are often incomplete); Pl.'s Reply,
ECF No. 61, at 6-7 (arguing that it is logistically feasible
that phytosanitary certificates indicate storage and inspection
site rather than producer).

[23] See Pl.'s Br., ECF No. 55, at 15-16 (asserting that
Plaintiff's sudden high volume of garlic imports was not
indicative of planned antidumping duty fraud, but quick action
on a perceived business opportunity after an increase in the
antidumping duty rates for other garlic importers made
importation of QTF-produced garlic financially reasonable), 16
(arguing that QTF did have the facilities to produce the entered
amount of garlic because it was produced during the garlic
harvest season and employees work long shifts during this
period); Pl.'s Reply, ECF No. 61, at 8-9 (asserting that QTF did
have the requisite production capacity for the type of garlic at
issue).

[24] Plaintiff presents some of its evidence through affidavit. See
Zhou Decl., ECF No. 55-1 at app. 2.  Defendant argues that the
information in the Zhou Declaration "was not presented to CBP at
entry, nor did CBP have the opportunity to consider this
evidence in reaching its decision," and Plaintiff "should not be
permitted to attack CBP's actions on a basis never presented to
the agency." Def.'s Resp., ECF No. 56, at 20 (quoting 28 U.S.C.
§ 2637(d) ("[T]he Court of International Trade shall, where
appropriate, require the exhaustion of administrative
remedies."); United States v. L. A. Tucker Truck Lines, Inc.,
344 U.S. 33, 37 (1952) ("[O]bjections to the proceedings of an
administrative agency [must] be made while it has opportunity
for correction in order to raise issues reviewable by the
courts.")).  While it is true that "the focal point for judicial
review should be the administrative record already in existence,
not some new record made initially in the reviewing court,"
                                          (footnote continued)

discrepancies and omissions in QTF's documentation and the
absence of any other evidence to adequately fill those gaps –
and, without a clear error in judgment, concluded that it could
not verify that QTF was the producer. See Overton Park, 401 U.S.
at 416.  Under the arbitrary and capricious standard, "[t]he
court is not empowered to substitute its judgment for that of
the agency." Id.  Customs has explained the evidence and made a
"rational connection between the facts found and the choice
made." Burlington Truck Lines, 371 U.S. at 168.  Accordingly,
Custom's decision was not arbitrary and capricious.[25]

---

Camp, 411 U.S. at 142, the record may be supplemented if to do
otherwise would "frustrate effective judicial review," id. 142-
43; Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381
(Fed. Cir. 2009) (internal citation and quotation marks omitted)
(The existing record should be supplemented only where it "is
insufficient to permit meaningful review consistent with the
APA.").  Here, without the Zhao Declaration, it would be
impossible to determine whether Customs' decision was arbitrary
and capricious for having "entirely failed to consider an
important aspect of the problem" before it: the reliability of
phytosanitary certificates as evidence. State Farm, 463 U.S. at
43; see also 28 U.S.C. § 2640(e) (actions brought under §
1581(i) are reviewed under 5 U.S.C. § 706); 5 U.S.C. § 706(2)(A)
(providing for arbitrary and capricious review).  Accordingly,
consideration of the declaration is appropriate.

[25] Plaintiff also argues that Customs' decision was arbitrary and
capricious because it was discriminatory. Pl.'s Br., ECF No. 55,
at 5, 15; see also SKF USA Inc. v. United States, 263 F.3d 1369,
1382 (Fed. Cir. 2001) ("[A]n agency action is arbitrary when the
agency offers insufficient reasons for treating similar
situations differently.") (alteration, quotation marks and
citation omitted).  Plaintiff claims that other companies have
incomplete phytosanitary certificates, see TRO Hr'g Tr., ECF No.
40, at 36:4-9; Zhao Decl., ECF No. 55-1 at app. 2, at ¶¶2-5;
                                            (footnote continued)

### III.   Plaintiff was Afforded Adequate Process.[26]

   Customs is tasked with making bond sufficiency

determinations, but in doing so, it cannot "ignore the required

procedures of decisionmaking." <u>Bennett v. Spear</u>, 520 U.S. 154,

---

Attach. 1 to Decl. Zhao Zhenqing, ECF No. 31-1 (providing a
sampling of incomplete and imperfect phytosanitary certificates
from Zhengzhou Harmoni Spice Co. ("Harmoni") and Hebei Golden
Bird Trading Co., Ltd. ("Golden Bird"), but have not been
subject to the same bond sufficiency determination as QTF. <u>Pl.'s
Reply</u>, ECF No. 61, at 10-11 n.11.  However, even if Harmoni and
Golden Bird have comparable incomplete phytosanitary
certificates, <u>see Def.'s Resp.</u>, ECF No. 56, at 23 (noting that
the provenance of competitors' phytosanitary certificates
offered into evidence is unestablished), this is not enough to
show that Customs acted arbitrarily, because the companies are
not similarly situated to QTF.  Neither Harmoni nor Golden Bird
has a producer-specific combination rate. <u>See Fresh Garlic from
the [PRC]</u>, 71 Fed. Reg. 26,329, 26,332 (Dep't Commerce May 4,
2006) (final results and partial rescission of antidumping duty
administrative review and final results of new shipper reviews)
(setting Harmoni's rate at 0.00 percent irrespective of
producer); <u>Fresh Garlic from the [PRC]</u>, 79 Fed. Reg. 36,721,
36,723 (Dep't Commerce June 30, 2014) (final results and partial
rescission of the 18th antidumping duty administrative review;
2011-2012) (setting Golden Bird's rate at the PRC-wide rate,
irrespective of producer).  Unlike QTF, Customs would not need
to determine their producer to know the appropriate cash deposit
rate.  Errors and omissions in their phytosanitary certificates
would not trigger a bond sufficiency determination because the
information contained (or not) therein, has no effect on their
rate.

[26] Defendant argues that Plaintiff has waived his argument that
Customs afforded him inadequate process because he has
"dedicate[d] one sentence in [his] brief to challenging the
adequacy of the written notice of the STB requirement," without
any elaboration to the "factual or legal basis for [his]
argument." <u>Def.'s Resp.</u>, ECF No. 56, at 26-27 (citing <u>United
States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990)).  However,
this is incorrect.  Defendant cites only to <u>Pl.'s Br.</u>,
ECF No. 55, at 4-5 (Plaintiff's summary of argument) while
ignoring the same filing at 16-17 (Plaintiff's actual argument).

172 (1997) (citation omitted).  Because there is no protected

interest in importing to the United States, an enhanced bonding

determination does not trigger Constitutional due process

concerns. See Bd. of Trustees of Univ. of Illinois v. United

States, 289 U.S. 48, 57 (1933) (holding that there is no

protected property interest in importing to the United States).[27]

The statute provides only that Customs may require additional

bonding as "deem[ed] necessary." 19 U.S.C. § 1623(a).  The

regulation is similarly lacking in procedural requirements. See

19 C.F.R. § 113.13(d).[28]

---

[27] See also Hera Shipping, 10 CIT at 496, 640 F. Supp. at 269
("[T]he amount of a bond does not appear to be as significant in
the scale of values as the interests for which full due process
rights have been found," and "the business person's right to
have a bond remain unchanged is not the sort of property right
which is of such fundamental importance that it must remain in
place, unmolested, until good cause to change it is developed in
a hearing.") (citation omitted).

[28] Customs has circulated and published notice of an informal
guidance memorandum on bond sufficiency determinations
undertaken "when the port has developed a reasonable belief that
acceptance of a transaction secured by a continuous bond would
place the revenue in jeopardy because of Anti-dumping/
Countervailing Duty (AD/CVD) concerns." Mem. from Exe. Dir.,
Trade Policy and Programs Div., Office of Int'l Trade, CBP, to
Dirs. of Field Operations and Assistant Dirs. of Trade and Field
Operations, Office of Field Operations, CBP, on the Use of
Single Transaction Bonds as Additional Security for Antidumping
and Countervailing Concerns, Public Distribution of Information
on Use of Single Transaction Bonds as Additional Security for
Anti-Dumping and Countervailing Duties (June 13, 2012)
reproduced in App. to Mem. in Supp. of Def.'s Opp'n to Pl.['s]
Appl[]. for TRO & Mot[]. for Prelim. Inj., ECF No. 25-1 ("STB
Mem."), at A7-8.  But there is nothing in this informal guidance
(footnote continued)

Accordingly, further elaboration of the appropriate

procedure remains generally within the Customs' discretion.

---

that binds the agency to particular procedures.  While "[i]t is
a familiar rule of administrative law that an agency must abide
by its own regulations," Fort Stewart Sch. v. Fed. Labor
Relations Auth., 495 U.S. 641, 654 (1990) (citations omitted),
"[t]he general consensus is that an agency statement, not issued
as a formal regulation, binds the agency only if the agency
intended the statement to be binding." Farrell v. Dep't of
Interior, 314 F.3d 584, 590 (Fed. Cir. 2002) (citations
omitted).  "The primary consideration in determining the
agency's intent is whether the text of the agency statement
indicates that it was designed to be binding on the agency." Id.
at 591.  Custom's public notice contains nothing to suggest that
the memorandum was considered binding; rather it was meant to
provide "guidance" to ensure "the appropriate use of the port's
authority to require additional bonding in a uniform manner."
STB Mem., ECF No. 25-1, at A7.

Further, the record indicates that Customs abided by this
guidance in making Kwo Lee's bond sufficiency determination.
The notice states, inter alia, that: (1) "[e]ach transaction
will be judged on its own merits," and "[o]nly on a case-by-case
basis will the STB be required"; (2) "[i]mporters/brokers will
be provided [with] written notice of the STB requirement," and
"[t]he notice will include[] [t]he amount of the STB [and] the
general reason why the STB is being required"; and (3) the
amount of the STB "in general, will be based on the value of the
merchandise times the AD/CVD rate that would apply if the goods
were subject to [the given] AD/CVD rate." Id.  Here, (1) the
determination made was specific to Kwo Lee, see Pilipavicius
Decl., ECF No. 56-1 at tab 1, at ¶¶6-11; Djeng Decl., ECF No.
56-1 at tab 2, at ¶¶3, 7-10; Edert Decl., ECF No. 56-1 at tab 3,
at ¶7; (2) Kwo Lee's broker was provided with written notice of
the amount of the required additional bonding, see CBP Form
4647, ECF No. 56-2 at tabs 11 & 14, at AR-000187-88, AR-000199-
200, and a statement of the general reasons why STBs were
required for the entries, Information Notice, ECF No. 56-2 at
tabs 11 & 14, at AR-000189, AR-000201; and (3) the amount of
additional bonding was calculated to increase the total bonding
to equal the potential antidumping duty liability for the QTF
exporter/unknown producer rate, Pilipavicius Decl., ECF No. 56-1
at tab 1, at ¶11.

Absent "an erroneous interpretation of the law" or "clearly

erroneous factual underpinnings," a discretionary decision can

be set aside only if it "represents an unreasonable judgment in

weighing relevant factors," A.C. Aukerman Co. v. R.L. Chaides

Const. Co., 960 F.2d 1020, 1039 (Fed. Cir. 1992) (citations

omitted), or if Customs fails to provide "sufficient information

as to the basis for the change [in bonding requirement] to allow

it to be challenged in court," Hera Shipping, 10 CIT at 496, 640

F. Supp. at 269.[29]   Outside this, the court will defer to the

agency "regarding the development of the agency record." Dongtai

Peak Honey Indus. Co. v. United States, 777 F.3d 1343, 1351

(Fed. Cir. 2015) (internal quotation marks and citation

omitted).[30]

---

[29] See also Nat'l Fisheries, 33 CIT at 1151-52, 637 F. Supp. 2d
at 1284-85.

[30] Indeed, "[a]bsent constitutional constraints or extremely
compelling circumstances the administrative agencies should be
free to fashion their own rules of procedure and to pursue
methods of inquiry capable of permitting them to discharge their
multitudinous duties." Vermont Yankee Nuclear Power Corp. v.
Natural Res. Def. Council, Inc., 435 U.S. 519, 543 (1978)
(quotation marks and citation omitted); see also Perez v.
Mortgage Bankers Ass'n, 135 S. Ct. 1199, 1207 (2015) ("Beyond
the APA's minimum requirements, courts lack authority 'to impose
upon [an] agency its own notion of which procedures are "best"
or most likely to further some vague, undefined public good.' To
do otherwise would violate 'the very basic tenet of
administrative law that agencies should be free to fashion their
own rules of procedure.'") (quoting Vermont Yankee, 435 U.S. at
549, 544) (alteration in original).

It is true that here the written notice Customs
provided Plaintiff was a generalized statement, the same as that
provided to the industry as a whole several months earlier.[31]  It
indicated only that heightened bonding was required "[d]ue to
discrepancies found with entry documents, concerns with bond
sufficiency and the financial risk associated with the entry of
fresh garlic from the PRC." Information Notice, ECF No. 56-2 at
tabs 11 & 14, at AR-000189, AR-000201; Information Notice, ECF
No. 55-1 at app. 1 (same).  It did not indicate, as Customs had
decided, that because Plaintiff failed to produce documentation
to establish the identity of its producer, Customs, in
accordance with Commerce's instructions, required bonding equal
to the rate assigned to entries from QTF as exporter with an
unknown producer – the PRC-wide rate. See Twelfth NSR, 73 Fed.
Reg. at 56,552-53.  In this respect it was deficient.  However,
concurrent and subsequent communications between Plaintiff and
Customs[32] as well as affidavits, documentation, and briefing

---

[31] Compare Port of San Francisco Information Notice (June 9,
2014), reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2
at tab 23, at AR-001060, with Information Notice, ECF No. 55-1
at app. 1.

[32] See, e.g., E-mail from Pilipavicius to Hume, ECF No. 56-2 at
tab 15, at AR-000202-03 (explaining that Customs was requiring
additional bonding pursuant to 19 C.F.R. § 113.13(d) because all
of Plaintiff's phytosanitary certificates were "incomplete or
discrepant," leaving the producer of the garlic in question); E-
mail from Frank Djeng to Ted Hume (Sept. 4, 2014, 01:58PM),
                                        (footnote continued)

provided in the course of this action,[33] have served to cure the deficiency. <u>See</u> <u>Hera Shipping</u>, 10 CIT at 497, 640 F. Supp. at 269; <u>cf.</u> <u>Jennings v. Mahoney</u>, 404 U.S. 25, 26 (1971).  Plaintiff was made aware of Customs' decision and reasoning and has been given opportunity to challenge it, before both before Customs and this Court.  Plaintiff was, therefore, accorded adequate process.

## CONCLUSION

          Customs' bond sufficiency determination, and the resultant additional bonding requirement imposed on Plaintiff, is sustained as in accordance with law, not arbitrary and capricious, and not an abuse of discretion.

---

reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2 at tab 18, at AR-000208 (confirming teleconference, as requested by Plaintiff, to discuss the use and meaning of the phytosanitary certificates); see also E-mail from Hong to Dolor & Djeng, ECF No. 56-1 at tab 5, at AR-000007-11 (requesting further documentation to "verify the manufacturer/shipper of the instant shipment"); E-mail from Frank Djeng to Nick Hong (Aug. 28, 2014, 02:56PM), reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2 at tab 11, at AR-000186 (providing Plaintiff with CBP Form 4647 and Information Notice); E-mail from Frank Djeng to Richard Edert and others (Aug. 28, 2014, 06:42PM), reproduced in [Con.] App. to [Def.'s Resp.], ECF No. 56-2 at tab 12, at AR-000190 (summarizing conversation with Plaintiff's counsel, stating that they were waiting for "more information to prove that he does represent the importer[]" and that the Customs officers "did not reveal anything except giving him a history of the garlic duty evasion to support why we're asking for STB (revenue risk, bond saturation, [number] of shipments)").

[33] Pilipivicius Decl., ECF No. 56-1 at tab 1; Djeng Decl., ECF No. 56-1 at tab 2; Edert Decl., ECF No. 56-1 at tab 3; Def.'s Resp., ECF No. 56; App. to [Def.'s Resp.], ECF Nos. 56-1 & 56-2.

Entry of judgment is stayed pending the final determination in the Twentieth Administrative Review of the Antidumping Duty Order on Fresh Garlic from the PRC,[34] which will decisively establish Plaintiff's antidumping duty liability.

/s/ Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: June 12, 2015
       New York, NY

---

[34] See Petitioner's Request for Admin. Rev., A-570-831, ARP 13-14 (Dec. 1, 2014), reproduced in Apps. to Pl.'s Br., ECF No. 55-1 at app. 4.